William ZARO and Ruth Zaro, his wife, Pincus Eisenberg and Agnes Eisenberg, his wife, Jack Greenseid and Ann Greenseid, his wife, Allan Grant and Lillian Grant, his wife, Evelyn Jewett, William Henderson and Eleanor Henderson, his wife, Carl Thier, Max Thier, Howard Thier, Ralph Meyer and Janice Meyer, his wife, Walter Meyer, Lew Greene, Allen Robert Green, Michael L. Smolens, Harvey Spiro, William Greenwald, Seymour Rosenwasser and Marilyn Rosenwasser, his wife, Stanley Werner and Ida Werner, his wife, Plaintiffs,

v.

Joel MASON, Charles Raich, J. Richard Hoffman and Pasquale Sesti, Defendants.

Joel MASON, Charles Raich and J. Richard Hoffman, Third-Party Plaintiffs,

v.

Jerome B. EISENBERG, Martin Honig, Irwin S. Meyer and Eisenberg, Honig & Meyer, a law partnership, Third-Party Defendants.

No. 83 Civ. 6300(MEL).

United States District Court, S.D. New York.

April 16, 1987.

Peckar & Abramson, New York City for plaintiffs; Bruce D. Meller, of counsel.

Blodnick, Pomeranz, Schultz & Abramowitz, P.C., Lake Success, N.Y., for defendants and third-party plaintiffs J. Richard Hoffman and Charles Raich; Jules A. Epstein, of counsel.

Gandin, Schotsky & Rappaport, P.C., Melville, N.Y., for defendant Joel Mason; Robert A. Katz, of counsel.

Bergadano, Zichello & Babchik, New York City, for third-party defendants; Joseph Bergadano, of counsel.

LASKER, District Judge.

This case concerns the formation of a limited partnership, Maiden Boca Associates ("Maiden Boca"), organized for the purchase and development of real estate in Boca Raton, Florida, to be sold to the public as condominiums. Plaintiffs are limited

partners who invested in Maiden Boca. Defendants, who are also third-party plaintiffs, are the general partners of Maiden Boca, and are former partners in an accounting firm with previous experience in real estate development. Third-party defendants are lawyers (and their law firm), who are allegedly "special limited partners" of Maiden Boca and who assisted in the partnership's capital formation stage. Due to a series of financial setbacks, Maiden Boca has foundered, and plaintiffs have failed to recover their investments.

Plaintiffs sued the general partners to recover their initial investments and to obtain punitive damages under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982) and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1986). Defendants move for summary judgment under Fed.R.Civ.P. 56(b), and plaintiffs cross-move for summary judgment on the issue of defendants' liability under Fed.R.Civ.P. 56(a).

### History of the Case

In early 1979, defendants set about to form the limited partnership known as "Maiden Boca Associates." They enlisted the third party defendants to assist in the capital formation stage. Third-party defendants, some of whom are friends and relatives of various of the plaintiffs in this action, prepared the offering statement and other documents necessary to raise the initial required capital of $400,000, and recruited many of the plaintiffs to become limited partners. In May 1979, plaintiffs purchased limited partnership interests in Maiden Boca. Plaintiffs allege that they invested in Maiden Boca in reliance on a clause in the offering memo which guaranteed them a return of fifteen percent annually on their investment:

> The General Partner will personally be liable for the "15% annual profit", due to the Limited Partner as that term is de-

fined in paragraph 11 of this Agreement.[1]

However, the partnership agreement which plaintiffs ultimately signed stated that:

> In no event will the General Partner be liable for the return of the Limited Partners' "Capital Contribution", their "15% annual profit", except out of "Profits" as these terms are defined in Paragraph 11 of this Agreement.[2]

Plaintiffs allege that defendants knew or should have known that plaintiffs relied on the guarantee of an annual fifteen percent return when they invested in Maiden Boca.

On June 8, 1979, after plaintiffs had entered into the limited partnership agreement, one of the original general partners, Pasquale Sesti, resigned as general construction contractor. Subsequently, the partnership obtained another general contractor, but at terms different from those afforded Sesti as general partner. Sesti was to be paid for the construction work out of partnership profits. The new contractor, on the other hand, demanded outright payment for services rendered. Plaintiffs allege that defendants failed to inform them of these events.

Under the section entitled "Leverage", the limited partnership agreement states: "The Partnership intends to finance the project by raising $400,000 in equity from the limited partners and borrowing approximately $2,200,000 in construction loans."[3] The limited partners claim the general partners only secured $1,900,000 in construction loans. Under the section entitled "Description of the Project," the agreement also states: "The Partnership intends to obtain construction financing from a major bank in the sum of $2,200,000 with an interest rate not to exceed 15% per annum."[4] The limited partners claim the general partners obtained financing at a floating interest rate of between 18–22% from a private lender, not a major bank.

1. Plaintiffs' Brief in Support of Cross-Motion for Partial Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment and Alternative Relief, Exhibit B.

2. *Id.* at Exhibit C.

3. Exhibits on Behalf of Defendants Hoffman and Raich in Support of Motion for Summary Judgment and Alternate Relief, Exhibit 3, p. 4.

4. *Id.* at Exhibit 3, p. 7.

After a series of financial and contractual setbacks, the partnership was subjected to foreclosure by its creditors, including the lender and the new contractor. Defendants concede that Maiden Boca has proven unprofitable.

Plaintiffs brought this action in August 1983. In May 1985, defendants moved for summary judgment or, in the alternative, to disqualify plaintiffs' attorney of record because he was a material witness, and to file an amended answer and amended third-party complaint. On May 2, 1986, defendants' summary judgment motion was granted against three plaintiffs for lack of evidence of reliance by them on the language of the agreement. Defendants' motion to disqualify plaintiffs' attorney of record was denied, and defendants' motions to amend were granted in part and denied in part. Action on the balance of defendants' summary judgment application was deferred pending further discovery by plaintiffs on the issue of defendants' alleged fraudulent intent. The defendants have now renewed their motion for summary judgment, and plaintiffs have cross-moved for partial summary judgment and to reinstate the three plaintiffs whose claims were dismissed by the court in May.

The plaintiffs presently allege that the defendants made the following seven material misrepresentations and omissions in the preparation and presentation of a limited partnership prospectus and agreement for Maiden Boca:

(1) Defendants failed to inform plaintiffs of impending foreclosures;

(2) Defendants failed to obtain the approval of the Limited Partners before allowing the withdrawal of a General Partner as contractor;

(3) Defendants failed to inform the Limited Partners of of a change in employment terms for the replacement contractor;

(4) Defendants failed to take adequate measures to insure against foreclosures on Partnership property by the contractor and the loan institution;

(5) Defendants failed to secure adequate financing as per the prospectus and agreement;

(6) Defendants failed to secure a loan from a "major bank" at a specified rate of interest as per the prospectus and agreement;

(7) Defendants knowingly or recklessly led plaintiffs to invest in Maiden Boca in reliance on a paragraph in the original offering memorandum allegedly guaranteeing a 15% annual return on plaintiffs' investment, which in the final partnership agreement contained no such guarantee.[5]

With respect to the first four issues, the limited partners have failed to state a claim under § 10(b)[6]. Accordingly, those claims are dismissed. The seventh claim, however, raises material issues of fact which must be determined at trial. Summary judgment is denied on that claim.

### DISCUSSION

#### Claims (1), (2) and (3)

Under § 10(b), the fraud complained of must be "in connection with" the purchase or sale of a security, 15 U.S.C. § 78j(b): plaintiffs must allege that defendants' material misrepresentations or omissions caused them to purchase or sell the securities in question.[7] See Securities and Exchange Commission v. Texas Gulf Sulfur Co., 401 F.2d 833, 860 (2d Cir.1968), cert. denied, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). As a threshold issue, then, plaintiffs must allege that the fraud was committed prior to or contemporaneous with the transaction such that it in-

---

5. See Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment and Alternative Relief at 28–29.

6. Although this motion was brought under Fed. R.Civ.P. 56(b), claims one through four are dismissed under Fed.R.Civ.P. 12(b)(6) for failure to

state a claim upon which relief can be granted under § 10(b).

7. Defendants do not dispute that the sale of limited partnership interests is a sale of securities under § 10(b). See Luce v. Edelstein, 802 F.2d 49, 55 (2d Cir.1986).

duced the plaintiffs to purchase interests in Maiden Boca. *See Freschi v. Grand Coal Venture,* 551 F.Supp. 1220, 1227 (S.D.N.Y. 1982).

In their first three claims, plaintiffs allege that defendants (1) failed to inform them of the liens and impending foreclosures on the partnership's property by the contractor and the lender; (2) failed to obtain the approval of the limited partners for the withdrawal of the general partner, Sesti; and (3) failed to inform the limited partners of the terms of employment for Sesti's replacement.

However, plaintiffs do not dispute that these events all occurred *after* plaintiffs invested in Maiden Boca. *See* Complaint, ¶ 17–22. Thus, the general partners' alleged omissions could not have caused the limited partners to invest in Maiden Boca. Nor can they be shown to have been failures to inform which were culpable at the time of the respective omissions. Accordingly, plaintiffs' first, second and third claims are dismissed.

### Claim (4)

■ Plaitniffs allege that the general partners' failure to take adequate measures to insure against foreclosures by creditors on the partnership's property constitutes a material misrepresentation or. omission actionable under § 10(b).

Although defendants' failure to prevent foreclosure might constitute a breach of fiduciary duty, it is not actionable under § 10(b). In *Santa Fe Industries v. Green,* 430 U.S. 462, 478–80, 97 S.Ct. 1292, 1303–05, 51 L.Ed.2d 480 (1977), the Supreme Court expressly refused to expand the scope of § 10(b) and Rule 10b–5 to include claims of breach of fiduciary duty because Congress did not intend § 10(b) to regulate corporate conduct traditionally left to state regulation. *Accord Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986); *Pross v. Katz,* 784 F.2d 455, 458 (2d Cir.1986). Here, the limited partners have merely asserted that the general partners mismanaged Maiden Boca. Accordingly, the third claim is dismissed.

### Claims (5) and (6)

Plaintiffs claim that, contrary to statements made in the partnership agreement, the defendants secured only $1,900,000 in construction loans and obtained financing at a floating interest rate of between 18–22% from a private lender, instead of at a 15% rate from a major bank.

■ A promise, or a statement of intentions, is actionable under § 10(b) only if, at the time the statement was made, the declarant secretly intended not to perform, and if the promise was part of the consideration for a sale of securities. *See Luce,* 802 F.2d at 55; *Pross,* 784 F.2d at 457. Here, after completion of discovery, the limited partners have made no showing that at the time the representations were made the general partners harbored an intent contrary to their stated objectives. Accordingly, the fifth and sixth claims are dismissed.

### Claim (7)

The plaintiffs' seventh claim, however, does raise material factual questions. The limited partners allege that a paragraph in the offering memorandum which guaranteed the limited partners a 15% annual return on their investments was altered so that the final agreement made no such guarantee. There is no dispute that the latter version is the version signed by all parties. The plaintiffs assert that the defendants themselves either altered the offering memorandum or knew or should have known of the alteration and that defendants' failure to inform the plaintiffs of this change constitutes a reckless misrepresentation or omission of material fact under § 10(b).

Defendants, on the other hand, maintain that they did not prepare the documents and were not aware of the discrepancy between the offering memorandum and the final agreement, and claim that the third-party defendants prepared the documents and induced the plaintiffs to invest in Maiden Boca. Defendants argue that summary judgment should be granted on this issue because plaintiffs, after discovery, have

failed to make any showing that defendants knew that plaintiffs were relying on a guarantee of 15% annual profits when they invested in Maiden Boca, but intentionally omitted to tell plaintiffs that there was no such guarantee.

■ It is true that plaintiffs have made no showing that defendants had any knowledge about the alleged fifteen percent guarantee before plaintiffs invested in Maiden Boca. However, it is not necessary to prove intent to deceive under § 10(b). In order to maintain an action under § 10(b), a claimant must, of course, establish *scienter* on the part of the offending party. However, the Court of Appeals for this circuit has held that, where the defendant owes a fiduciary duty to the plaintiff, proof of reckless disregard of truth or falsity satisfies the *scienter* requirements. *See Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38, 44–47 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978). Negligent misstatement or omission alone is insufficient to meet this standard. To meet the threshold for recklessness, a plaintiff must demonstrate that the defendant's conduct is highly unreasonable and represents an extreme departure from the standards of ordinary care. *Id.* at 47.

■ In this case, it is impossible to determine on the present record whether defendants' conduct concerning the preparation of the offering memoranda was reckless. At trial, the material issues of fact regarding *scienter* which must be determined will include: 1) what degree of supervision over the preparation of offering memoranda is customary—in other words, what is the standard of ordinary care in the industry; 2) to what extent were the general partners involved in and knowledgeable about the preparation of the Maiden Boca offering memoranda; 3) to what extent were the general partners knowledgeable about any oral assurances given by the third-party defendants to potential limited partners; and 4) was the general partners'

conduct reasonable under the circumstances.

■ Furthermore, even if defendants are correct in contending that only the third-party defendants were responsible for guaranteeing a 15% return to the plaintiffs, defendants could be liable under § 10(b) on a theory of respondeat superior: such a determination would require the resolution of factual questions concerning the scope of employment of the third-party defendants, and whether their acts were within the scope of their employment. *See Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 711–16 (2d Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980).

Plaintiffs' cross-motion for partial summary judgment on the issue of defendants' liability under § 10(b) must also be denied since it, too, raises the same questions concerning defendants' *scienter.*

### Plaintiffs' Motion to Reinstate

As a further issue, the limited partners seek to reinstate three plaintiffs—Walter H. Meyer, Eleanor Henderson, and Evelyn Jewett—against whom summary judgment was entered on May 6, 1986, for failure to show reliance under § 10(b). Plaintiffs' motion is denied.

■ Both Walter Meyer and Eleanor Henderson testified on deposition that they did not read, and thus did not rely on, either the prospectus or agreement. Meyer specifically testified that he relied on the advice of his nephew, third-party defendant Irwin Meyer, in making his decision to invest. Henderson testified that she relied on the advice of plaintiff Carl Thier. After the deferral of this motion was granted for further discovery, attorneys for the plaintiffs produced substantially identical boilerplate affidavits from all of the plaintiffs except Jewett. In their affidavits, Henderson and Meyer each state that they invested in Maiden Boca "in reliance upon ... receiving ... the guaranteed 15% return on my investment." [8] However, these

---

8. Affidavit of William and Eleanor Henderson ¶ 7 (Sept. 18, 1986); Affidavit of Walter Meyer ¶ 6 (Sept. 18, 1986).

statements are inconsistent with their earlier testimony on deposition. Furthermore, statements from the plaintiffs themselves which could have been submitted at the time the summary judgment motion was first considered do not constitute new evidence which would justify reconsideration of their claims. Eleanor Jewett testified on deposition that she invested in Maiden Boca on the advice of Jerome B. Eisenberg, a third party defendant, that the investment would give her "a good return." [9] Jewett has not subsequently submitted an affidavit alleging that she relied on any specific guarantee of profits when she invested. For these reasons, the motion to reinstate the claims of Henderson, Meyer and Jewett is denied.

Defendants' motion for summary judgment is granted with the exception of the issue of the alleged alteration of a paragraph between the initial prospectus and the final partnership agreement respecting an alleged guarantee of a 15% annual return. Plaintiffs' motion to reinstate three plaintiffs is denied. Plaintiffs' cross-motion for summary judgment is denied.

It is so ordered.

---

9. *See* Transcript of Oral Deposition of Evelyn Jewett at p. 9.