**FIRST MORTGAGE COMPANY OF PENNSYLVANIA, Intervening Plaintiff Below, Appellant,**

v.

**FEDERAL LEASING CORPORATION, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted: Nov. 18, 1982.

Decided: Dec. 22, 1982.

Donald Booker (argued), Wilmington, for intervening plaintiff below, appellant.

Gary G. Greenstein (argued), of Berkowitz, Greenstein, Schagrin & Coonin, Wilmington, for defendant below, appellee.

Before McNEILLY, HORSEY and MOORE, JJ.

PER CURIAM:

This appeal arises out of a Superior Court denial of the claim of First Mortgage Company of Pennsylvania (FMCP) for mortgage priority over Federal Leasing Corporation (Federal).

I

In 1972, Filippo and Carmela Lionti, husband and wife, paid $135,000 cash for two acres of land in Pennsylvania on Route 202. At the same time, the Liontis owned two houses in Brandywine Hundred, Delaware on which Wilmington Savings Fund Society had first mortgages. In 1976, Mr. Lionti needed $200,000 with which to complete a restaurant that he had begun to build on the Pennsylvania property. FMCP granted the Liontis a loan commitment for that amount, requiring a first lien on the Pennsylvania property and second liens on the two houses in Delaware.

The Liontis owned and were to operate the restaurant in the name of Route 202 Corporation. On August 9, 1976 they gave

FMCP a first mortgage on the Pennsylvania property and second mortgages on the Delaware properties. FMCP recorded the mortgage on the Pennsylvania property on that same day, but did not record its mortgages on the Delaware houses until March 17, 1977.

Later in August, 1976, the Liontis, through an intermediary, contacted Federal to assist in completing the purchase of restaurant kitchen equipment worth approximately $67,500. Under the terms of the agreement, Federal was to purchase the equipment for $67,500 and lease it to the Route 202 Corporation. As security for the lease, Federal insisted upon personal guarantees by the Liontis and second mortgages on the two houses in Delaware. After a subsequent lien search showed only the Wilmington Savings Fund Society mortgage as a prior lien on the Delaware properties, Federal and Corporation 202 signed a lease for the equipment. The Liontis both personally guaranteed payment of the rent and executed second mortgages on the two Delaware houses in the amount of $37,500 each, using a short mortgage form. Federal recorded both mortgages on September 15, 1976.

Subsequently, Route 202 Corporation defaulted on its rental payment to Federal. Federal instituted foreclosure proceedings against the two Delaware properties. FMCP intervened, claiming priority over Federal. FMCP argued that although Federal had recorded its mortgages first, the FMCP mortgages had priority because Federal knew of their existence at the time it took its mortgages.

A trial on the validity of the Liontis' second mortgages to Federal was held on January 17, 1980. At this trial the Liontis advanced a number of defenses against the foreclosure of the mortgages on the Delaware property, the principal defense being fraud in that neither of the Liontis spoke English and had no understanding of the papers they signed. The trial court rejected this defense and further found that Federal did not know of the unrecorded FMCP mortgages at the time it took and recorded this mortgage. Subsequently, a second trial was held on the issue of the priority of the mortgages. At its conclusion the trial court ruled that Federal had no knowledge of the unrecorded second mortgages of FMCP and dismissed FMCP's complaint.

## I

FMCP's first contention in support of its appeal is that the trial court's dismissal of its complaint for priority over Federal was error in that Federal was on notice that a prior mortgage existed on the properties. This argument misconstrues the Delaware statute governing priority of mortgages, 25 *Del.C.* § 2106.[1]

As conceded by appellant at oral argument, § 2106 is a pure race statute and as such the time of recording is determinative. The rule is first in time, first in right. In the instant case Federal recorded its mortgages in September, 1976, a full six months before FMCP, and, therefore, had priority.

## II

FMCP next attacks the validity of the Federal mortgages on the houses in that they were void *ab initio* for several reasons. We deal with each seriatum and conclude that each lacks any merit.

FMCP first argues that the mortgages are void for lack of consideration in that Federal obtained the two mortgages from the Liontis in their personal capacity without any property being transferred to the Liontis. It is well settled that consideration for a contract can consist of either a

---

1. 25 *Del.C.* § 2106 provides:

     Priority of mortgage from time of recording. A mortgage, or a conveyance in the nature of a mortgage, of lands or tenements shall have priority according to the time of recording it in the proper office, without respect to the time of its being sealed and delivered, and shall be a lien from the time of recording it and not before.

benefit to the promiser or a detriment to the promisee. *Affiliated Enterprises v. Waller*, Del.Supr., 5 A.2d 257 (1937). "This is equivalent to saying that if the promisee parts with something at the promisor's request, it is immaterial whether the promisor receives anything, and necessarily involves the conclusion that the consideration given by the promisee for a promise need not move to the promisor, but may move to anyone requested by the offer." *Williston On Contracts* 3ed § 113.

In the instant case Federal, as a condition for the lease, required the Liontis to place mortgages on their homes as security for the loan. The Liontis, as the promisors, incurred a legal detriment in that they incumbered their homes, so a loan would be given to the corporation. This in and of itself constitutes sufficient consideration. *See Danby v. Osteopathic Hospital Ass'n of Delaware*, Del.Ch., 101 A.2d 308, affirmed Del.Ch., 104 A.2d 903 (1954); *Commercial Finance Co. v. DeMartelly*, Pa.Supr., 269 Pa. 354, 112 A. 447 (1921).

FMCP next argues that the mortgages are void because they cover future indebtedness and the provisions of 25 *Del.C.* § 2118[1] dealing with mortgages covering future indebtedness have not been complied with. It is FMCP's contention that since the mortgages were signed in 1976 but not triggered until 1978 they cover future indebtedness, and as such must meet the requirements of 25 *Del.C.* § 2118. This argument is incorrect in that our review of the record indicates that the Liontis were personally liable to Federal at the time of the execution of the mortgages. Hence 25 *Del.C.* § 2118 was never triggered in that there was never any future indebtedness.

The last argument raised by FMCP is that the agreement between Federal and the Liontis required that all litigation concerning these mortgages be brought in New Jersey, and since this was not done there is no debt due and owing. We have reviewed the record, and in our opinion there is no factual or legal justification to support this contention.

AFFIRMED.

---

1. 25 *Del.C.* § 2118(a) provides:

Any mortgage or other instrument given for the purpose of creating a lien on real property may, and when so expressed therein or when so expressed in a separate loan agreement specifically referred to therein and incorporated by reference (which loan agreement need not be recorded) shall secure not only existing indebtedness, but also future advances, whether such advances are obligatory or to be made at the option of the lender, or otherwise, as are made within 5 years from the date thereof, to the same extent as if such future advances were made on the date of the execution of such mortgage or other instrument, although there may be no advance made at the time of the execution of such mortgage or other instrument and although there may be no indebtedness outstanding at the time any advance is made. Such lien, as to third persons with or without actual knowledge thereof, shall be valid as to all such indebtedness and future advances from the time the mortgage or other instrument is recorded or entered in the proper office as provided by law. The total amount of the indebtedness that may be so secured may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed a maximum principal amount which must be specified in such mortgage or other instrument, plus interest thereon, service charges, and any disbursements made for the payment of taxes, assessments, or insurance on the property covered by the lien, with interest on such disbursements.