# COURT OF CHANCERY
# OF THE
# STATE OF DELAWARE

KATHALEEN ST. JUDE MCCORMICK
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 17, 2020

Victor Ivy Brown
200 N. Washington Street, Suite 403
Wilmington, DE 19801

Louis J. Rizzo, Esquire
Reger Rizzo & Darnall LLP
Brandywine Plaza East
1521 Concord Pike, Suite 305
Wilmington, DE 19803

Re: *Brown v. The City Library of Wilmington*,
C.A. No. 2019-0663-KSJM

Dear Mr. Brown and Counsel,

The parties to this action are Pro Se Plaintiff Victor Ivy Brown and Defendant The City Library of Wilmington, which is identified by a number of aliases in the caption, and which this decision refers to as the "Library." The Library has moved to dismiss Mr. Brown's Amended Verified Complaint for Declaratory Relief and Injunctive Relief, which this decision refers to as the "Amended Complaint" and cites as the "Am. Compl."[1] This letter resolves the Library's motion to dismiss. For reasons I will explain, the motion is granted.

---

[1] The Amended Complaint is found at Civil Action No. 2019-0663-KSJM Docket Entry No. 12. Going forward, this decision cites to docketed items in this action using the abbreviation "Dkt." along with the entry number.

## I. FACTUAL BACKGROUND

Before turning to the factual background, I remind the parties of the standard that governs this motion. The Library has moved to dismiss pursuant to Court of Chancery Rule 12(b)(6) for failure to state a claim. On a Rule 12(b)(6) motion, the Court must accept the facts alleged in the operative complaint as true, provided that the allegations take the form of well-pleaded facts as opposed to conclusory statements.[2] The Court must also draw all reasonable inferences derived from the well-pleaded allegations in favor of the plaintiff.[3] The Court will grant the motion if, after accepting the well-pleaded allegations and all reasonable inferences derived therefrom as true, it determines the plaintiff could not recover "under any reasonably conceivable set of circumstances susceptible of proof."[4] As is required by the Rule 12(b)(6) standard, for the purpose of this factual background, I accept as true the facts alleged in the Amended Complaint and documents it attaches as exhibits.[5]

---

[2] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. Ch. 2011) (citing *Savor, Inc. v. FRM Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[3] *Id.*

[4] *Id.*

[5] The Library attached as "Exhibit A" to its opening brief a letter dated October 20, 2018, from Mr. Brown to a Library employee. The contents of that letter are not considered for the purpose of resolving the Library's motion.

## A.     The Parties

The Library is public library located in downtown Wilmington, Delaware.[6] Mr. Brown, a resident of Wilmington, has made extensive use of the Library since he joined as a patron in 2011.[7] Mr. Brown served our country in the Armed Forces.[8] He suffers joint pain and has difficulty walking even a short distance.[9] He was declared to be a person with disabilities by the U.S. Department of Veterans Affairs in 2008.[10] The Library is the only public library within walking distance of Mr. Brown's home.[11] Mr. Brown believes that he has been harassed by Library employees on multiple occasions since 2013 and has lodged complaints concerning this behavior to Library supervisors.[12]

## B.     Events Giving Rise to This Litigation

There was an event in October 2019 that led the Library to permanently ban Mr. Brown from the "Used Book Store" section of the Library and to temporarily

---

[6] Am. Compl. p. 3.

[7] *Id.* pp. 4–5.

[8] *Id.* p. 8.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* pp. 5–6 & Exs. 1 & 2.

suspend his privileges to use other sections and services of the Library.[13] By a letter dated October 20, 2019, the Library informed Mr. Brown that, due to his violation of Library rules, his privileges had been suspended for a six-month period, or until April 29, 2019.[14] The letter also informed Mr. Brown that he was permanently banned from the Used Book Store and all future "Friends of the Library" events, which includes a biannual sale that Mr. Brown likes to attend.[15]

Five days before Mr. Brown's suspension was lifted, on April 24, 2019, Mr. Brown entered the Used Book Store.[16] After Mr. Brown refused to leave, Library security personnel contacted the police.[17] Mr. Brown left the building at the request of the responding police officer.[18] He was not arrested.[19] A similar pattern of events occurred on May 1, 2019, when Mr. Brown attempted to enter the Library to attend a biannual sale.[20] Again, the police were called and Mr. Brown was asked

---

[13] Am. Compl. Ex. 4.

[14] *Id.*

[15] *Id.*

[16] Am. Compl. p. 6.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

to leave.[21]  In response to these events, the Library suspended Mr. Brown's privileges for another ninety days, or until July 23, 2019.[22]

### C.    This Litigation

Mr. Brown commenced this litigation on August 21, 2019.[23]  The initial complaint incorrectly named "The County of New Castle" among the defendants.[24]  Mr. Brown dismissed the claims as to the County on October 15, 2019,[25] and filed the Amended Complaint on November 4, 2019.[26]

The Amended Complaint is twenty pages long.  It contains approximately eight pages of information asserted in narrative form under the headings "JURISDICTION," "THE PARTIES," and "BACKGROUND," and then just over nine pages of assertions in numbered paragraphs under the heading "FACTS."  It attaches twelve exhibits, which are communications between Mr. Brown and the Library and the Library rules.

---

[21] *Id.* at p. 7.

[22] Am. Compl. Ex. 8.

[23] Dkt. 1, Verified Compl. for Declaratory Relief & Injunctive Relief.

[24] Dkt. 11, Stipulation & Order Dismissing Def. New Castle County with Prejudice & Granting Pl. Leave to File an Am. Compl.

[25] *Id.*

[26] Am. Compl.

The Amended Complaint includes twelve specific requests for relief, which can be found in full on pages 18 through 19 of the Amended Complaint.  By way of summary, the requested relief seeks to enjoin the Library from banning Mr. Brown from various sections and suspending his privileges and seeks to "induce" the Library "to enforce Library regulations."[27]  Mr. Brown also laments the organizational structure of the Library, including that the Library "Coordinator" appears to him be an unsupervised position.[28]  Mr. Brown asks that Court "rewrite the organizational chart of the Library" to give Mr. Brown "direct authority over the Coordinator and also to protect [his] right to use all of the Library without being subject to harassment."[29]  He would also like the Court to order the Coordinator to attend anger management sessions.[30]

The Library moved to dismiss the Amended Complaint on December 16, 2019.[31]  On February 12, 2020, the parties agreed to stay this litigation to engage in mediation.[32]  After efforts to reach an amicable resolution were unsuccessful, the

[27] *Id.* p. 8; *see also id*. p. 18 at ¶¶ (1), (4)–(7).

[28] *Id.* p. 8.

[29] *Id.*; *see also id.* p. 19 at ¶¶ (8)–(9).

[30] *Id.* p. 19 at ¶ (10).

[31] Dkt. 19, Def. The City Library of Wilmington, a/k/a The Wilmington Institute, Inc., a/k/a The Wilmington Institute's, Mot. to Dismiss Pl.'s Am. Verified Compl. for Declaratory Relief & Injunctive Relief.

[32] Dkt. 23, Stipulation & Order Temporarily Staying Action for Mediation.

parties stipulated to a schedule for briefing the Library's motion.[33]  The Library filed its Opening Brief on June 5, 2020.[34]  On June 23, 2020, Mr. Brown filed a document titled Supplemental Motion in Opposition to Defendant's Motion to Dismiss, which this decision referred to as the "Opposition" and cites as "Opp'n."[35]  The Library filed its final brief on June 25, 2019.[36]  The parties filed a stipulation waiving oral argument on the motion on July 8, 2020.[37]

## II.    LEGAL ANALYSIS

The Amended Complaint does not contain traditional "Counts" or "Causes of Action," but the "JURISDICTION" section and prayer for relief identify two sources of authority on which Mr. Brown relies.  The first source is Delaware's Equal Accommodations Act, codified at Title 6, Chapter 45, of the Delaware Code (the "Equal Accommodations Act" or the "Act").  The Act "is intended to prevent, in places of public accommodations, practices of discrimination against any person

---

[33] Dkt. 24, Notice of Filing Agreement to Cessation of Mediation; Dkt. 27, Stipulation & Brief Scheduling Order Governing Def.'s Mot. to Dismiss.

[34] Dkt. 29, Def. The City Library of Wilmington, a/k/a The Wilmington Institute, Inc., a/k/a The Wilmington Institute's Br. in Supp. of Its Mot. to Dismiss.

[35] Dkt. 30, Pl.'s Suppl. Mot. in Opp'n to Def.'s Mot. to Dismiss Pl.'s Am. Verified Compl. for Declaratory Relief & Injunctive Relief & Mot. to File Second Am. Compl.

[36] Dkt. 33, Def., The City Library of Wilmington, a/k/a The Wilmington Institute, Inc., a/k/a The Wilmington Institute's Reply Br. in Supp. of Its Mot. to Dismiss.

[37] Dkt. 36, Stipulation & Order Waiving Oral Arg. on Def.'s Mot. to Dismiss.

because of race, age, marital status, creed, color, sex, disability, sexual orientation, gender identity, or national origin."[38] The second source is an alleged contract formed between Mr. Brown and the Library by virtue of his Library card and the Library rules.[39]

The Library's Opening Brief alerted Mr. Brown to the Delaware Supreme Court's decision in *Miller v. Spicer*, 602 A.2d 65 (Del. 1991). There, the Supreme Court held that the Equal Accommodations Act does not authorize a private cause of action and that the Act's administrative remedies are the exclusive means for redressing the discriminatory practices prohibited by the Act. Under *Miller*, therefore, a claimant's only course of redress for discriminatory practices prohibited by the Act is to file a complaint with the administrative agency authorized by the Act—the Human Relations Commission.

In light of *Miller*, Mr. Brown effectively withdrew his claims under the Equal Accommodations Act through the Opposition.[40] The Opposition set forth substantive arguments in opposition to the Opening Brief and also sought leave to "amend the [Amended Complaint] to include one count of breach of contract" and

---

[38] 6 *Del. C.* § 4501 (cited at Am. Compl. p. 2 & p. 18 at ¶ (2)).

[39] Am. Compl. p. 2 & p. 18 at ¶ (2); Am. Compl. Ex. 11.

[40] Opp'n p. 3 (proposing to file a Second Amended Complaint that would delete references to "6 *Del. C.*, Subtit. 11, Ch. 45").

to drop reference to the Act.[41]  This decision treats the request to amend the complaint set forth in the Opposition as a clarification that Mr. Brown no longer seeks to pursue relief under the Act.  This decision therefore need not address the Library's arguments based on *Miller*.[42]

The sole remaining issue raised by the motion is whether Mr. Brown's count for breach of contract states a claim on which relief can be granted.

To state a claim for breach of contract, a plaintiff must first establish the existence of a valid contract.[43]  A valid contract requires (1) an offer, (2) acceptance, and (3) consideration.[44]

Mr. Brown argues that his Library card and the posted Library rules gave rise to a valid contract between him and the Library.[45]  This argument misconstrues the nature of the relationship between Mr. Brown and the Library.

---

[41] *Id.* pp. 2–3.

[42] Had Mr. Brown continued to press a claim under the Act, such claim would have been dismissed.  For avoidance of doubt, to the extent Mr. Brown continues to press that claim, it is dismissed pursuant to *Miller*.

[43] *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003) (identifying "a contractual obligation" as the first of three elements of a breach of contract claim).

[44] *Trexler v. Billingsley*, 166 A.3d 101 (TABLE), 2017 WL 2665059, at *3 (Del. June 21, 2017).

[45] Opp'n pp. 2–5.

The Library did not create a contractual relationship with Mr. Brown by issuing him a Library card or posting rules of conduct. For a contractual relationship to arise, some consideration must pass between the parties.[46] Consideration "can consist of either a benefit to the promisor or a detriment to the promisee."[47] No consideration passed between Mr. Brown and the Library.

Because there is no contract between Mr. Brown and the Library, Mr. Brown's claim for breach of contract fails under Court of Chancery Rule 12(b)(6).

## III. CONCLUSION

For the foregoing reasons, the Amended Complaint is dismissed with prejudice.

A few housekeeping matters remain. First, in the Opposition, Mr. Brown argues that the Library's Answer is outstanding and that the Court should resolve Mr. Brown's outstanding motion to compel an Answer.[48] Under Court of Chancery rules, however, a motion to dismiss may be made prior to answering a complaint.[49] Mr. Brown's motion to compel is therefore denied. Second, as discussed above, Mr. Brown sought leave to amend the Amended Complaint through the Opposition.

---

[46] *First Mortg. Co. of Pa. v. Fed. Leasing Corp.*, 456 A.2d 794, 795–96 (Del. 1982).

[47] *Id.*

[48] Opp'n p. 3.

[49] Ct. Ch. R. 12(b).

This decision treated that request as a concession of the Library's arguments based on *Miller*. To the extent Mr. Brown seeks to pursue that request as an independent motion to amend, it is denied. As discussed above, the motion sought to permit Mr. Brown to pursue a single claim for breach of contract. Under Delaware law, "leave to amend should be denied when the proposed amendment would be futile."[50] A motion for leave to amend a complaint is futile where the amended complaint would be subject to dismissal under Rule 12(b)(6) for failure to state a claim."[51] Because the Amended Complaint fails to state a claim for breach of contract, the motion for leave to amend is denied as futile.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Vice Chancellor

cc:     All counsel of record (by *File & ServeXpress*)

---

[50] *Clark v. State Farm Mut. Automobile Ins. Co.*, 131 A.3d 806, 811 (Del. 2016).

[51] *Id.* at 812 (quoting *Price v. E.I. du Pont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011)).