# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CHRISTOPHER J. TIGANI, )
)
Appellant, )
)
v. ) C.A. No. N21A-05-001 CEB
)
FISHER DEVELOPMENT COMPANY, )
NINA FISHER, and MICHAEL )
PHOUTS, )
)
Appellees. )

## ORDER

Submitted: January 26, 2022
Decided: April 6, 2022

*Upon Consideration of Appellant's Appeal from the Court of Common Pleas*,
**AFFIRMED**.

Christopher J. Tigani, Wilmington, Delaware. *Pro se Appellant*.

Thomas C. Marconi, Esquire, LOSCO & MARCONI, P.A., Wilmington, Delaware. *Attorney for Appellees Fisher Development Company, Nina Fisher, and Michael Phouts*.

**BUTLER, R.J.**

Appellant Christopher J. Tigani has appealed from a decision of the Delaware Court of Common Pleas ("CCP") that granted a motion by Appellees Fisher Development Company, Nina Fisher, and Michael Phouts (collectively, "Appellees") to enforce a settlement agreement between the parties. The Court assumes the parties' familiarity with this case's background and procedural history and so only recounts the facts necessary for affirming CCP's decision.

1.      Mr. Tigani sued Appellees in the Delaware Justice of the Peace Court (the "JP Court") to recover personal items he left behind after Appellees evicted him. The JP Court ruled in Mr. Tigani's favor. Appellees appealed to CCP.

2.      During these events, Mr. Tigani had been litigating a separate case in the Delaware Court of Chancery (the "Chancery Action"). The Chancery Action was based, in part, on Mr. Tigani's challenges to alleged self-dealing transactions between his father's trust and a family business.[1] Mr. Tigani learned that Mr. Phouts was connected to one of the business's executives. Given that relationship, Mr. Tigani believed Appellees had "information" that could support his claims.[2] So he sought to "make a deal" with them that involved settling the JP Court litigation.[3]

---

[1] For a complete discussion of the Chancery Action, the Court directs readers to a decision issued in the Chancery Action itself. *See generally Tigani v. Tigani*, 2021 WL 1197576 (Del. Ch. Mar. 31, 2021).

[2] D.I. 14, Ex. B (E-mail from Christopher Tigani, to Thomas C. Marconi, Esquire (Dec. 4, 2020, 3:15 PM EST)).

[3] *Id.* Ex. C (E-mail from Christopher Tigani, to Michael Phouts (Dec. 6, 2020, 8:02 PM EST)).

3.     Mr. Tigani e-mailed an unsolicited "settlement offer" to Appellees' counsel ("Counsel") for Appellees' review and acceptance.[4]  Under the offer, Mr. Tigani would agree, among other terms, to drop the JP Court replevin case, in exchange for Appellees' agreement to provide him with "all facts, communications, and evidence" they had about his Chancery Action allegations.[5]  The offer, however, was not conditioned on any certain quality or quantity of information:

> I have a settlement offer for your clients . . . . I will:
>
> 1. Withdraw my Amended Complaint with prejudice.
> 2. Pay your clients $33,000, which is the amount the [Appellees] are seeking in their [JP Court] counter-claims.
> 3. Pay all of the [Appellees'] legal fees from January 2019, up to $15,000.
> 4. Execute broad waivers of liability for the benefit of [Appellees] . . . .
>
> In exchange:
>
> 1. *[Appellees] provide all facts, communications, and evidence of any scheme or payments from [parties involved the Chancery Action].*
> 2. [Appellees] execute a videotaped statement under oath in [the Chancery Action], swearing to the facts above.
> 3. The videotaped statement would be filed under seal.
>
> Please let me know if your clients are interested in the offer . . . .
>
> Thank you,
>
>
> Chris Tigani[6]

---

[4] *Id.* Ex. B (E-mail from Christopher Tigani, to Thomas C. Marconi, Esquire (Dec. 4, 2020, 3:15 PM EST)).
[5] *Id.*
[6] *Id.* (emphasis added).

4. Mr. Tigani's offer expired before Appellees responded.[7] Then he unilaterally extended the deadline.[8] He did explain that the extension would be final because discovery in the Chancery Action was about to close.[9] But he did not revise or clarify his offer's terms or suggest they had a different meaning.

5. Appellees accepted Mr. Tigani's renewed offer.[10] After Counsel relayed Appellees' acceptance, Mr. Tigani called Counsel on the phone.

6. Mr. Tigani sought reassurance from Counsel that Appellees actually had information that would be useful for or relevant to his Chancery Action claims.[11] Counsel stated that the settlement only required Appellees to testify to what they knew, if anything, about the Chancery Action allegations.[12] Given this position, Mr. Tigani told Counsel that, in his view, a contract never formed.[13]

7. Appellees disagreed. So they moved in CCP to enforce the settlement. CCP granted Appellees' motion, finding an enforceable contract validly formed.[14]

---

[7] *Id.* Ex. C (E-mail from Christopher Tigani, to Thomas C. Marconi, Esquire (Dec. 6, 2020, 5:00 PM EST)).

[8] *Id.* (E-mail from Christopher Tigani, to Michael Phouts (Dec. 6, 2020, 8:02 PM EST)).

[9] *Id.*

[10] *Id.* (E-mail from Thomas C. Marconi, Esquire, to Christopher Tigani (Dec. 7, 2020, 12:54 PM EST)).

[11] *Id.* Ex. D (Phone Tr. at 1:18.5, 2:41.8).

[12] *Id.* (Phone Tr. at 4:03.7, 5:40.5, 6:17.1).

[13] *Id.* (Phone Tr. at 9:12.6).

[14] *See Fisher Dev. Corp. v. Tigani*, 2021 WL 1346526, at *3–4 (Del. Ct. Com. Pl. Apr. 9, 2021).

8.    This *pro se* appeal followed.  Mr. Tigani argues that the settlement is not valid or enforceable because (i) there was no agreement on the scope of information Appellees were to provide; and, relatedly, (ii) Appellees' failure to provide the information he wanted amounts to a lack of consideration.[15]  Appellees defend CCP's decision.  For the reasons below, the Court affirms.

9.    This Court has appellate jurisdiction over CCP's civil decisions.[16]  Here, CCP granted Appellees' motion on contractual grounds.  The Court treats contract formation issues as mixed questions of law and fact.[17]  The Court reviews questions of contract interpretation *de novo*.[18]  And the Court will defer to CCP's factual findings unless its findings are "clearly wrong."[19]

---

[15] Mr. Tigani also argues that Appellees breached the implied covenant of good faith and fair dealing.  D.I. 14 at 23–25 (Appellant's Opening Br.).  But he did not make this argument to CCP.  So it is waived on appeal.  *E.g.*, *Lowicki v. State*, 2019 WL 3564162, at *4 (Del. Super. Ct. Aug. 5, 2019); *see* 10 *Del. C.* § 1326(c) (1994) (limiting this Court's review to "the record" below).  *See also Griffin v. Ramirez*, 2021 WL 5577261, at *1 (Del. Super. Ct. Nov. 30, 2021) (observing that procedural law "will not be relaxed" for *pro se* parties (internal quotation marks omitted)).

[16] 10 *Del. C.* § 1326(a).

[17] *E.g.*, *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1213, 1230, 1232 (Del. 2018) (describing some formation issues as factual questions and others as legal ones).

[18] *E.g.*, *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

[19] *Anderson v. State*, 21 A.3d 52, 57 (Del. 2011) (internal quotation marks omitted).

10. *Pro se* pleadings generally are construed more liberally than counseled ones.[20] But "[t]here is no different set of rules for *pro se*" litigants.[21] The Court "cannot disregard or rewrite controlling law to accommodate a *pro se* party."[22]

11. Under Delaware law, "[a] valid contract requires an offer, acceptance, and consideration . . . ."[23] These elements attach when the parties (i) intend to be bound; (ii) agree to sufficiently definite terms; and (iii) make a bargained-for exchange.[24] In determining whether a contract has formed, the Court "looks to the parties' intent as to the contract as a whole, rather than analyzing whether the parties possess the requisite intent to be bound to each particular term."[25]

12. "Delaware adheres to an objective theory of contracts[.]"[26] As a result, "overt manifestation of assent—not subjective intent—controls the formation of a contract."[27] A party's intent is "unimportant except as manifested."[28]

---

[20] *See, e.g.*, *Browne v. Robb*, 583 A.2d 949, 959 (Del. 1990); *Johnson v. State*, 442 A.2d 1362, 1364 (Del. 1982).

[21] *Draper v. Med. Ctr. of Del.*, 767 A.2d 796, 799 (Del. 2001).

[22] *Melvin v. Jennings*, 2021 WL 6053871, at *2 (Del. Super. Ct. Dec. 21, 2021) (internal quotation marks omitted).

[23] *Trexler v. Billingsley*, 2017 WL 2665059, at *3 (Del. June 21, 2017).

[24] *E.g.*, *Osborn*, 991 A.2d at 1158.

[25] *Eagle Force*, 187 A.3d at 1229.

[26] *Leaf Invenergy Co. v. Invenergy Renewables LLC*, 210 A.3d 688, 696 (Del. 2019) (internal quotation marks omitted).

[27] *Eagle Force*, 187 A.3d at 1229 (internal quotation marks omitted).

[28] *Indus. Am., Inc. v. Fulton Indus., Inc.*, 285 A.2d 412, 415 (Del. 1971) (internal quotation marks omitted).

13.    Once a contract is determined to have formed, the Court "will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions."[29]  In construing a valid and unambiguous contract, the Court may not consider extrinsic evidence.[30]  Conversely, "[c]ontract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."[31]  "[I]t is not the job of a court to relieve . . . parties of the burdens of contracts they wish they had drafted differently but in fact did not."[32]

14.    "The law, of course, favors the voluntary settlement of contested issues."[33]  So "voluntary settlements . . . will be enforced whenever possible."[34]  Because settlements are "binding contracts[,]"[35] the Court must enforce them "as written and not as hoped for by litigation-driven arguments."[36]  "Even if the bargain

---

[29] *Fletcher v. Feutz*, 246 A.3d 540, 555 (Del. 2021) (internal quotation marks omitted).

[30] *E.g.*, *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 847 (Del. 2019); *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).

[31] *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012) (internal quotation marks omitted).

[32] *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *2 (Del. Ch. Jan. 23, 2006).

[33] *Rome v. Archer*, 197 A.2d 49, 53 (Del. 1964).

[34] *Trexler*, 2017 WL 2665059, at *3.

[35] *Crescent/Mach I Partners, L.P. v. Dr Pepper Bottling Co.*, 962 A.2d 205, 208 (Del. 2008).

[36] *Urdan v. WR Cap. Partners, LLC*, 244 A.3d 668, 675 (Del. 2020).

they strike ends up a bad deal for one or both parties, the court's role is to enforce the agreement as written."[37]

15.     CCP must be affirmed. To begin, the undisputed facts[38] show that the parties intended to be bound. Mr. Tigani (i) titled his message as a "settlement offer;" (ii) drafted the offer's terms; (iii) assigned duties to both sides; (iv) identified the information he thought Appellees had; (v) presented the offer for Appellees' acceptance; and (vi) extended the offer's deadline without Appellees' prompting and even though they failed to timely respond initially.[39] Ultimately, Appellees accepted the offer on its terms, confirming the parties' mutual intent to be bound.[40] Taken together, CCP's factual findings are not clearly wrong. To the contrary, CCP's reasoning faithfully tracked contract law. Mr. Tigani's reasoning does not.

16.     Mr. Tigani devotes half of his briefing to Appellees' duty to disclose Chancery Action information. But in determining whether a contract has formed,

---

[37] *Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 919 (Del. 2021).

[38] *E.g.*, *Del. Bay Surgical Servs., P.C. v. Swier*, 900 A.2d 646, 650 (Del. 2006) (observing that intent to be bound is a factual issue).

[39] *See Eagle Force*, 187 A.3d at 1230 (approving at the formation stage consideration of "the parties' prior or contemporaneous agreements and negotiations in evaluating whether the parties intended to be bound").

[40] *See id.* at 1230 & n.145 (observing that the contract itself "offers the most powerful and persuasive evidence of the parties' intent to be bound," especially when the contract is "signed" by the parties).

8

the Court looks to "the contract as a whole," not just "particular term[s]."[41] As explained, the settlement as a whole indicates that the parties intended to be bound.

17. To be sure, the parties' intent extends to all the settlement's terms too. That includes its material terms. Minding the Chancery Action and his need for supplemental discovery, Mr. Tigani considered Appellees' information disclosure duties to be essential.[42] And Appellees accepted those duties without any pushback. So there is no materiality problem here either.[43]

18. Mr. Tigani bases the other half of his briefing on the intent he expressed to Counsel on the phone after Appellees accepted the offer. This effort fails twice.

19. First, Mr. Tigani's "unexpressed subjective intent[]" is irrelevant.[44] Instead, the Court assesses the evidence surrounding a settlement's formation objectively from the perspective of a "reasonable negotiator."[45] Here, a reasonable negotiator would think "all" means "all," not "useful" or "relevant." A reasonable

[41] *Id.* at 1229.
[42] *Id.* at 1230 (explaining that "[w]hat terms are material is determined on a case-by-case basis, depending on the subject matter of the agreement").
[43] *See id.* (explaining that "all essential or material terms must be agreed upon before a court can find that the parties intended to be bound by it and, thus, enforce an agreement as a binding contract").
[44] *Acierno v. Worthy Bros. Pipeline Corp.*, 693 A.2d 1066, 1070 (Del. 1997). *See Progressive Int'l Corp. v. E.I. duPont de Nemours & Co.*, 2002 WL 1558382, at *7 (Del. Ch. July 9, 2002) ("As a general matter, under the objective theory of contracts to which Delaware adheres . . . [the question of] intent does not invite a tour through the plaintiff's cranium, with the plaintiff as the guide." (cleaned up)).
[45] *Trexler*, 2017 WL 2665059, at *3 (internal quotation marks omitted).

negotiator also would think that, in the absence of a more precise demand, Mr. Tigani did not require Appellees to give him an exact amount or species of information.

20. Second, Mr. Tigani spoke with Counsel *after* Appellees accepted the offer. By that time, the evidentiary door was shut: The "objective test" governing intent examines "the evidence that the parties communicated to each other up until" acceptance.[46] So the "after-the-fact . . . subjective intent" Mr. Tigani "professed" to Counsel is unreviewable now.[47] Mr. Tigani did not communicate to Appellees any of the conditions he would reveal to Counsel after the contract already formed.

21. Mr. Tigani could have quantified or specified the desired information, or conditioned its utility or relevance, in his original offer, when he renewed it, or at any time before Appellees accepted it. He did not. Instead, he waited too long, without good reason, and in a manner inconsistent with the plain terms he drafted and the time-sensitive deadlines he urged. His intent is no longer open for debate.

22. Next, the settlement's terms are sufficiently definite as a matter of law.[48] Contract terms are sufficiently definite if "they provide a basis for determining the existence of a breach and for giving an appropriate remedy."[49] Here,

---

[46] *Eagle Force*, 187 A.3d at 1229–30.

[47] *Chemours Co. v. DowDuPont Inc.*, 2020 WL 1527783, at *9 (Del. Ch. Mar. 30, 2020), *aff'd*, 2020 WL 7378829 (Del. Dec. 15, 2020). *Accord Mikkilineni v. PayPal, Inc.*, 2021 WL 2763903, at *12 (Del. Super. Ct. July 1, 2021).

[48] *E.g.*, *Eagle Force*, 187 A.3d at 1232 (observing that the question of sufficient definiteness is "mostly, if not entirely, a question of law").

[49] Restatement (Second) of Contracts § 33(2) (1981).

the settlement required Mr. Tigani, among other things, to dismiss his JP Court claims. In exchange, Appellees were to provide him with "all" the information they had about the Chancery Action allegations. If Mr. Tigani failed to dismiss his claims, then he would be in breach. And if Appellees withheld information they actually had, then they would be in breach. In either case, the non-breaching party would be entitled to some form of relief. In any case, a court could "ascertain what the parties have agreed to do."[50] So CCP's ruling must be affirmed.

23. In opposition, Mr. Tigani interprets Appellees' information disclosure duties as "contingent."[51] That construction enables him to argue that the settlement's language is too unclear to be enforceable. This approach is self-defeating.

24. For one thing, Mr. Tigani confuses the secondary question of a contract's proper interpretation for the threshold question of a contract's formation.[52] A court cannot construe a contract if the contract does not exist in the first place.[53]

---

[50] *Eagle Force*, 187 A.3d at 1232.

[51] *E.g.*, D.I. 14 at 15–16 (Appellant's Opening Br.).

[52] *See generally* 11 Williston on Contracts §§ 30:1, 30:3, Westlaw (4th ed. database) (last updated Nov. 2021) (distinguishing among the concepts of interpretation, construction, and formation).

[53] *See, e.g.*, *Kotler v. Shipman Assocs., LLC*, 2019 WL 4025634, at *16 (Del. Ch. Aug. 21, 2019) ("To prevail on a breach of contract claim, the plaintiff must *first* prove the existence of a contract." (emphasis added) (alteration and internal quotation marks omitted)); *cf. Bay Point Cap. Partners L.P. v. Fitness Recovery Holdings, LLC*, 2021 WL 5025926, at *4 (Del. Super. Ct. Nov. 30, 2021) (observing shared aspects of interpretive and formation issues in a case where the parties did not dispute the contract's validity or enforceability).

Yet, his interpretive arguments read as if he has brought a breach of contract claim. Breach of contract claims presuppose a contract's enforceability.[54] If adopted, then, Mr. Tigani's reading effectively would concede the settlement's validity.[55]

25. For another, the interpretive stage would exclude the very evidence Mr. Tigani deems dispositive (*e.g.*, prior negotiations; the post-acceptance phone call).[56] Once a contract has formed and its language has been found unambiguous the contract itself becomes "the sole source for gaining an understanding of intent."[57] The settlement is not ambiguous. To the extent Mr. Tigani suggests that it is, his arguments fare no better. The Court cannot interpret an ambiguous contract using extrinsic evidence of the drafter's intent alone.[58] Instead, ambiguity in one-sided drafting, as here, would be resolved against the drafter—Mr. Tigani.[59]

---

[54] *See, e.g.*, *Hough Assocs., Inc. v. Hill*, 2007 WL 148751, at *14 (Del. Ch. Jan. 17, 2007) ("The first step in assessing [a] breach of contract claim is to discern whether the [contract] is valid and enforceable.").

[55] Tellingly, Mr. Tigani's waived implied covenant claim, *see supra* note 15, also presupposed a valid and enforceable contract, *see ASB Allegiance Real Est. Fund v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 444–45 (Del. Ch. 2012) (explaining that the implied covenant is a contract claim based on proof of breach-of-contract elements), *rev'd on other grounds*, 68 A.3d 665 (Del. 2013).

[56] *Compare Eagle Force*, 187 A.3d at 1230 (permitting use of extrinsic evidence in evaluating formation, including prior negotiations), *with Salamone v. Gorman*, 106 A.3d 354, 374–75 (Del. 2014) (prohibiting in the absence of ambiguity interpretations that rely on extrinsic evidence, including prior negotiations).

[57] *City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993).

[58] *E.g.*, *SI Mgmt. L.P. v. Wininger*, 707 A.2d 37, 43–44 (Del. 1998); *accord Balooshi v. GVP Glob. Corp.*, 2022 WL 576819, at *11 n.92 (Del. Super. Ct. Feb. 25, 2022).

[59] *See, e.g.*, *Osborn*, 991 A.2d at 1160; *SI Mgmt.*, 707 A.2d at 43–44.

26. Mr. Tigani's reading fails on the merits anyway. As written, the word "all" is not contingent. It requires Appellees to disclose everything they know, but does not require them to know something specific.[60] By asking Appellees to testify to "all" their information, without adding a standard of review, Mr. Tigani ran a risk that there would be no information or that none of it would be helpful. The Court, however, cannot rewrite the settlement or reallocate its risks *post hoc*.[61]

27. Finally, the settlement is supported by consideration. Consideration "can consist of *either* a benefit to the promisor or a detriment to the promisee."[62] And in a bilateral contract, like the settlement, each party is a promisee as to the other's promise.[63] Here, at least two detriments were incurred. For their part, Appellees were required to testify to "all" their Chancery Action "facts, communications, and evidence" during a deposition at which they otherwise would have no duty to appear. For his part, Mr. Tigani was required to dismiss a lawsuit

---

[60] *E.g.*, *All*, Merriam-Webster, https://www.merriam-webster.com/dictionary/all (last visited Apr. 2, 2022) ("[T]he whole amount; as much as possible; any whatever"). *See generally Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006) ("Under well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract.").

[61] *E.g.*, *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 624 (Del. Ch. 2005), *rev'd in part on other grounds*, 901 A.2d 106 (Del. 2006).

[62] *First Mortg. Co. v. Fed. Leasing Corp.*, 456 A.2d 794, 795–96 (Del. 1982) (emphasis added).

[63] *E.g.*, 11 Williston on Contracts § 1:17 ("A bilateral contract exists when both parties exchange mutual or reciprocal promises. The promise of each party is consideration supporting the promise of the other." (citations omitted)).

he had been winning. Combined, the parties' concessions formed a "bargained-for exchange."[64] Accordingly, CCP's ruling must be affirmed.

28. In a last gasp, Mr. Tigani complains that Appellees' failure to provide the information he wanted is no consideration at all. Again, this assumes that the settlement conditioned or graded Appellees' information. It did not. Plus, his objection is beside the point. Delaware courts do not appraise the value of consideration.[65] Nor do they assess "whether it is fair or adequate."[66] Instead, Delaware courts ask if consideration "exists."[67] By consequence, "bad" consideration is still consideration.[68] As explained, consideration exists here. That remains true even if, as Mr. Tigani insists, "the consideration exchanged" under the settlement "is grossly unequal or of dubious value[.]"[69] As the settlement's drafter, Mr. Tigani was "free" to extract more concessions from Appellees.[70] He did not.

29. Mr. Tigani sought last-minute support for his Chancery Action claims. So he leveraged his JP Court case to obtain as much cooperation and information

---

[64] *E.I. duPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 446 (Del. 1996).

[65] *E.g.*, *Osborn*, 991 A.2d at 1159.

[66] *Cox Commc'ns, Inc., v. T–Mobile US, Inc.*, -- A.3d --, 2022 WL 619700, at *9 (Del. Mar. 3, 2022) (internal quotation marks omitted).

[67] *Id.*

[68] *See Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) ("Parties have a right to enter into good and bad contracts, the law enforces both.").

[69] *Moscowitz v. Theory Ent. LLC*, 2020 WL 6304899, at *16 (Del. Ch. Oct. 28, 2020) (internal quotation marks omitted).

[70] *Id.* (internal quotation marks omitted).

14

from Appellees as possible. The fact that Appellees were not as productive as Mr. Tigani assumed does not make the settlement any less valid or enforceable.[71]

Accordingly, CCP's decision is **AFFIRMED**.

      **IT IS SO ORDERED**.

Charles E. Butler, Resident Judge

---

[71] *See Glaxo Grp.*, 248 A.3d at 919 ("Even if the bargain they strike ends up a bad deal for one or both parties, the court's role is to enforce the agreement as written.").